SIMON WILKINSON *v.* BARNET S. WAIT.

*Attachment.　Exemption.　Oxen.　Assignee　in　Bankruptcy.*
*Jurisdiction.　Damages.*

The plaintiff sold a pair of oxen to L. upon credit with a stipulation that they were to remain his, the plaintiff's, property until paid for. He also had in his possession and owned another pair of oxen which were attached by the defendant. *Held* that the latter pair of oxen were exempt from attachment notwithstanding the plaintiff's interest as such conditional vendor in the oxen sold to L.

The oxen in question being exempt from attachment by our State law, the property in them did not pass to the plaintiff's assignee in bankruptcy, nor the title of the plaintiff become impaired or affected by the bankrupt act.

The assignee in bankruptcy had no right to take the oxen, and the defendant was not bound to deliver them to him, and cannot protect himself from this action of trover, nor mitigate the damages, by showing such delivery even under protest on demand of the assignee.

The unexercised jurisdiction of the United States District Court over the question does not oust this court of jurisdiction, when the question arises collaterally as in this case by way of defense to an action in which this court has jurisdiction of the parties and the subject matter. But the question of jurisdiction of the United States District Court was not decided.

The injunction issued against the defendant by that court while he had the plaintiff's property under attachment, forbidding the sale of any of said property by him, being for the purpose of first determining whether the lien of the attaching creditor was paramount to the right of the general creditor to a *pro rata* distributive share of the property attached, in no way interferes with the right and remedy of the plaintiff as against the defendant.

TROVER, for the conversion of a pair of oxen. Plea, the general issue, and trial by the jury at the April term, 1871, BARRETT, J., presiding.

The taking was admitted; defendant justified as constable of Londonderry, under sundry writs of attachment against the plaintiff. The important question in the case was whether this pair of oxen were exempt from attachment, as the only pair of oxen the plaintiff then owned.

Defendant's evidence tended to show that plaintiff absconded from Weston, Vt., the latter part of March, 1869, and had never since been heard of. At the time he left he was possessed of quite an amount of personal estate, and was largely indebted. This pair of oxen were at his home barn, and were the only oxen he

then owned, unless a pair of oxen then in the possession of one Lincoln were also the property of plaintiff. As to these oxen, the evidence tended to show, and Lincoln testified in substance, that several weeks before Wilkinson left, he took the oxen to keep for a stipulated price per week; that soon after he purchased the oxen of Wilkinson for $240, on the condition that the oxen were to become his when he paid for them; that he never had paid for them; that soon after defendant attached the oxen in controversy; one Hannum, constable of Weston, attached the pair of oxen in Lincoln's possession and drove them away without objection by Lincoln, and that Lincoln has never since asserted any claim to those oxen.

Defendant's evidence also tended to show that the oxen in Lincoln's possession were most suitable for working oxen, while those which defendant attached were "fancy oxen," and more suitable for beef; but the plaintiff's evidence tended to show that the oxen Lincoln had were unfit for working oxen, and one of them had been badly injured, and was nearly worthless for working purposes, while the oxen taken by defendant were more valuable for working oxen than for beef.

It appeared that while the two pairs of oxen were in the possession of the officers who had attached them, proceedings were instituted in the United States court, under the bankrupt act, which resulted in said Wilkinson being declared a bankrupt. On the 30th day of April, 1869, an injunction, forbidding the sale of any of the plaintiff's property, was duly served on defendant.

The defendant testified on cross-examination that he advertised the oxen for sale and was about to sell them at auction, when Judge Arnold, as attorney for plaintiff, forbade the sale, and demanded the oxen of defendant—whereupon the sale was adjourned to a future day, but defendant refused to deliver the oxen to him.

On the 15th day of June, 1869, George Slate was appointed assignee of Wilkinson.

After Slate's appointment as assignee, and after demand and refusal, as above stated, he called upon defendant to deliver to him the oxen in controversy, claiming them as such assignee. Defendant delivered him the oxen, protesting that he had no right to

take them.　Slate subsequently sold the oxen, as such assignee, for $323.50, and now holds the proceeds.　No claim was made that the oxen were injured while in defendant's possession.

Defendant claimed that the oxen in Lincoln's possession were to be treated as plaintiff's property, and if the jury found that plaintiff had sold them to Lincoln on condition that they were to become his when paid for, and he had paid nothing for them ; that plaintiff had two yoke of oxen, and defendant had a right to attach one of them ; and, as plaintiff had absconded, defendant had the right to elect which pair he would attach.

The court held otherwise, and charged the jury in substance, that if plaintiff had sold the Lincoln oxen on condition that they were to remain plaintiff's property till paid for, that pair of oxen were not the property of plaintiff within the meaning of the statute exempting one pair of oxen or steers from attachment and execution ; that Lincoln had a right to the custody of the oxen, and the remedy of a creditor of plaintiff's was through the trustee process ; and that if they found that the oxen in controversy were the only yoke plaintiff then had beside the Lincoln oxen, plaintiff was entitled to recover.

Defendant also requested the court to charge that the oxen in controversy having been taken from defendant's custody by Slate, the assignee, plaintiff's remedy was against Slate, and that in no event was the plaintiff entitled to recover of defendant more than nominal damages.

The court declined so to charge, but did charge in substance, upon this point :—That if these oxen were exempt from attachment as the only oxen plaintiff then owned, the assignee in bankruptcy had no right to take them from defendant, because he had no jurisdiction over property that by the laws of this State was not subject to attachment for plaintiff's debts, and that if they found that this was the only yoke of oxen plaintiff then owned, defendant was liable for their conversion, and that the measure of damages was the value of the oxen at the time defendent converted them, with interest thereon to time of trial.

To the omission of the court to charge as requested, and to so

much of the charge as is above detailed, defendant excepted.
Verdict for the plaintiff.

*Charles N. Davenport* and *A. M. Albee*, for the defendant.

The plaintiff had absconded, and left no agent to select the yoke
of oxen he would have exempt from attachment. Hence the at-
taching officer must make the selection, and so the jury should
have been instructed. General Statutes, ch. 47, § 13 ; Acts of
1866, No. 39 ; *Haskins* v. *Bennett*, 41 Vt., 698. After the in-
junction was served upon the defendant he could take no steps to
dispose of the oxen upon his process ; nor could he return them
to the custody of the debtor. The only thing he could do was to
surrender the oxen to Slate, the assignee in bankruptcy, on his
demand. Now if, upon this state of facts, the defendant must pay
for these oxen, when plaintiff, if he is entitled to recover at all,
has a perfect remedy against the assignee, it is a reproach to the
law, and to modern civilization. The act of 1867 gives to the
District Courts full jurisdiction. " And the jurisdiction hereby
conferred shall extend to all cases and controversies arising be-
tween the bankrupt and any creditor or creditors who shall claim
any debt or demand under the bankruptcy ; *to the collection of all
the assets of the bankrupt ; to the ascertainment and liquidation
of the liens and other specific claims thereon ; to the adjustment of
the various priorities and conflicting interests of all parties,*" &c.
Act of Bankruptcy, 1867, § 1; ib. §§ 14, 42; Bump on Bank-
ruptcy, 3d ed., 244, 245. It will be said that by section 14 it is
provided, " that the foregoing exception shall operate as a limita-
tion upon the conveyance of the property of the bankrupt to his
assignees, and in no case shall the property hereby excepted pass
to the assignees, or the title of the bankrupt thereto be impaired
or affected by any of the provisions of this act ; and the determin-
ation of the assignee in the matter shall, on exception taken, be
subject to the final decision of said court." It seems entirely
clear, that this section, taken as a whole, shows that the assignee
has jurisdiction to determine, in the first instance, what property
is covered by the exemption in the State law, subject to revision
by the final decision of the United States court, on exception.

The power to decide this must exist somewhere, and the theory upon which the bankrupt act proceeds is, that all the power and authority necessary to accomplish its purposes exist in the United States courts, and the officers acting under their authority. 3d ed. of Bump on Bankruptcy, ch. 8.

But in any event, the court should have instructed the jury that plaintiff was only entitled to nominal damages. "No claim was made that the oxen were injured while in the defendant's possession." Whatever *real* injury and damage the plaintiff has suffered is from the act of Slate. If the old rule, that any wrongful interference with the property of another, by an officer acting in good faith, amounts to a conversion, to be followed by a liability for the full value of the property, "still lives," and is applicable to the facts of this case, it is quite time the rule was modified, if not wholly abrogated. The court erred in instructing the jury that the measure of damages was the *value of the property* at the time of the conversion, with interest to the time of trial. The true construction of the statute will exempt only a yoke of oxen or steers "not exceeding in value the sum of two hundred dollars" —hence if defendant is liable at all, the extent of his liability cannot exceed $200, and interest from the time of the conversion. No. 39, act of 1866.

*Waterman & Reed*, for the plaintiff.

The defendant having taken the oxen without authority and refused to deliver them up on demand, is liable in this action for their full value. *Moore* v. *Eldred*, 42 Vt., 13 ; *Johnson* v. *Powers*, 40 Vt., 611 ; *Tucker* v. *Merrill's estate*, 39 Vt., 77 ; Sedg. on Dam., p. 31.

The fact that defendant delivered the oxen to the plaintiff's assignee in bankruptcy, cannot be urged in reduction of damages.

The oxen being exempt from attachment by the laws of this State, the plaintiff's assignee had no jurisdiction over them, and no better right to them than the defendant himself had. U. S. Bankrupt Act, § 14.

Both were wrong-doers, and each liable to the plaintiff for the full value of the oxen at the time of their conversion.

The opinion of the court was delivered by

PECK, J. The jury have found that the pair of oxen in question were the only oxen the plaintiff owned, unless the oxen in Lincoln's possession at the time the defendant attached the oxen in question, were also the property of the plaintiff within the meaning of the statute exempting one pair of oxen from attachment. The jury having also found that the oxen in Lincoln's possession were there under a contract of sale for $240 by plaintiff to Lincoln, with a stipulation that they were to remain the plaintiff's property till " paid for," the court was right in holding that the pair of oxen attached by the defendant, which were the absolute property of the plaintiff and in his possession, were exempt from attachment, notwithstanding the plaintiff's interest as such conditional vendor in the oxen sold to Lincoln.

The oxen in question being exempt from attachment by our State law, the property in them did not pass to the asignee of the plaintiff in bankruptcy, nor the title of the plaintiff become impaired or affected by the bankrupt act, but is saved from its operation by express provision to that effect. From this it follows that the assignee had no right to take the oxen ; and the defendant was not bound to deliver them to the assignee, and cannot protect himself from this action, nor mitigate the damages, by showing such delivery even under protest, on demand of the assignee. It is claimed on the part of the defense that the United States district court had jurisdiction of the question as to the exemption of this property from attachment, and consequently from the operation of the bankrupt law, and that the plaintiff's only remedy is by application to the district court, at least except for nominal damages for taking and detaining the oxen up to the time the assignee took them from defendant. It is not necessary to pass upon the question of jurisdiction of that court, because the existence of jurisdiction of that court over the question, unexercised, does not oust this court of jurisdiction when the question arises collaterally, as in this case, by way of defence to an action in which this court has jurisdiction of the parties and the subject matter. The district court has rendered no judgment nor made any order touching the question involved in this case. The injunction issued

against the defendant by that court, while he had the plaintiff's property under attachment, forbidding the sale of any of the plaintiff's property by him, was manifestly for the purpose of first determining whether the lien of the attaching creditor was paramount to the right of the general creditors to a *pro rata* distributive share of the property attached. That in no way interferes with the right and remedy of the plaintiff as against the defendant, which rest on ground entirely distinct from that of the relative rights of the creditors of the plaintiff as between themselves under the bankrupt law. We have no occasion to express any opinion as to what the effect would have been upon the liability of the defendant, had it appeared that the assignee took the oxen from the defendant under a special order of the district court; for no such order was made, nor does it appear that any proceedings have been had in that court which can be construed as an adoption or sanction by that court of the act of the assignee in taking the oxen. It appears that the assignee sold the oxen, but that he still holds in his hands the funds arising from the sale. The proposition of the defendant's counsel, that the assignee of his own motion, without any order of court, had a right to take the property, and compel the plaintiff to abandon his remedy against the defendant, and follow him, the assignee, into the district court, is untenable. Before the defendant delivered the property to the assignee, he had become liable to the plaintiff for the taking of the property, and for refusing to deliver it when demanded, and nothing that transpired afterwards either defeats the action or mitigates the damages below the value of the oxen at the time of the conversion and interest.

Judgment affirmed.